KENNETH KAECKER AND GOLDEN KAECKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61361.    Filed July 9, 1958.

*James P. Kearney, Esq.*, for the petitioners.
*Erving Sodos, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* The respondent determined a deficiency in petitioners' income tax for the taxable year 1952 in the amount of $3,349.66. The only question in the case is whether a net operating loss deduction for the year 1952 resulting from net operating loss carrybacks from 1953 and 1954 was correctly computed.

All of the facts have been stipulated and are found accordingly.

Petitioners are husband and wife who, during the year 1952, resided at R. R. #3, Dixon, Illinois. They filed their joint income tax return for the calendar year 1952 with the district director of internal revenue at Chicago, Illinois.

In 1952 petitioners were farmers and owned several farms which they operated. During that year they sold one farm and realized a gain of $54,731.85. In the same year petitioners sold a trailer which resulted in a long-term capital loss of $1,133.33. Petitioners sustained a net farm loss of $8,602.95 during 1952, resulting in net income, for income tax purposes before any net operating loss deduction, of $17,196.31, determined as follows:

| | |
|---|---:|
| Gain on sale of property used in the trade or business | $54,731.85 |
| Loss from sale of long-term capital asset | 1,133.33 |
| Excess of gain over loss | 53,598.52 |
| Taken into account at 50 per cent | 26,799.26 |
| Less net farm loss | (8,602.95) |
| Adjusted gross income | 18,196.31 |
| Standard deduction | 1,000.00 |
| Net income | 17,196.31 |

In 1953 petitioners had a net operating loss carryback to 1952 of $11,774.49 and in 1954 petitioners had a net operating loss carryback to 1952 of $15,972.07.

Petitioners contend the net operating loss deduction for the year 1952 is the sum of the net operating loss carrybacks for 1953 and 1954, or $27,746.56. Respondent determined the amount of the net operating loss deduction for 1952 by subtracting from $27,746.56 the amount of $26,799.26, which latter sum is 50 per cent of the gain realized in 1952 from the sale of a farm by petitioners which was used in their trade or business. Thus it will be seen respondent's computation resulted in a determination that petitioners' net operating loss deduction for 1952 is $947.30.

Respondent and petitioners agree that section 122 (c) [1] governs the conversion of the net operating loss carrybacks from 1953 and 1954 to a net operating loss deduction for the year 1952, and they have stipulated that the net operating loss carrybacks from 1953 and 1954 are in the total sum of $27,746.56. The controversy between the parties lies as to what adjustments under section 122 (c) are required in converting these net operating loss carrybacks to a net operating loss deduction for the year 1952.

The pertinent portion of section 122 (c) is as follows:

SEC. 122. NET OPERATING LOSS DEDUCTION.

(c) AMOUNT OF NET OPERATING LOSS DEDUCTION.—The amount of the net operating loss deduction shall be the aggregate * * * of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) * * * (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction) * * *

The pertinent part of section 122 (d) (4) which is incorporated by reference into the above section, is as follows:

Sec. 122 (d) (4) * * * The deduction provided in section 23 (ee) shall not be allowed.

---

[1] All section references are to the Internal Revenue Code of 1939, as amended.

Section 23 provides for certain deductions from gross income and in section 23 (ee), provision is made for "the deduction for long-term capital gains provided in section 117 (b)."

In section 117 (a) (4) a "long-term capital gain" is defined to mean "gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income" and section 117 (b) provides "if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 per centum of the amount of such excess shall be a deduction from gross income."

The issue between the parties comes down to the narrow question of whether petitioners, in 1952, took a section 23 (ee) deduction. It is petitioners' argument that they did not because the asset sold was not a capital asset but was an asset used in their trade or business and petitioners point to section 117 (a) (1) (B), which specifically states that the term "capital assets" does not include "property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), or real property used in his trade or business." But respondent points to section 117 (j) (2) which provides that the gains and losses upon sales of property used in the trade or business "shall be considered as gains * * * from sales or exchanges of capital assets held for more than 6 months."

Respondent's computation is correct. The deduction which petitioners took in 1952 was a section 23 (ee) deduction. No other provision would allow only 50 per cent of the gain from the sale of the farm to be included in net income. Section 22 (a) requires the entire gain from the sale of the farm be included in computing gross income. Section 23 (ee) allows as a deduction in computing net income the deduction shown in section 117 (b). Petitioners had to apply section 117 (b) in order to deduct 50 per cent of the gain realized from the sale of the farm. The direction to do so is found in section 117 (j) (2) which, in effect, states the gains from the sale of property used in the taxpayer's trade or business shall be "considered" as gains from the sale of capital assets. It is this consideration that gave petitioners a section 117 (b) deduction and the right under section 23 (ee) to use the deduction in computing their net income. It follows then that under the plain command of section 122 (c) and section 122 (d) (4) the said deduction is to be ignored when computing the amount of 1952 income and the amount so deducted is to be used to reduce the sum of the net operating loss carrybacks in order to arrive at the 1952 net operating loss deduction.

What petitioners contend is that their gain be considered as a gain from the sale of a capital asset in order to get the section 117 (b) deduction but it should not be so considered when statutes provide the

section 117 (b) deduction is to be ignored when a net operating loss carryback is to be translated into a net operating loss deduction. Petitioners cite no authority favorable to their position.

The fact that section 117 (a) (1) (B) provides that assets used in the taxpayer's trade or business are not capital assets and tax treatment for certain purposes of capital assets differs from tax treatment of property used in the trade or business, is immaterial. It is very clear that net gains from the sale of assets used in the trade or business held for more than 6 months and net gains from the sale of capital assets held for more than 6 months receive the same capital gains treatment provided in section 117 (b).

It is clear it would thwart the general purpose of section 122 (c) to hold as petitioners contend. That general purpose is to allow a taxpayer to set off against income for 1 year the net operating losses for later years. It is a tax relief measure but it is designed to prevent combining with it certain designated relief allowances previously taken by the taxpayer. It reintroduces that income which had escaped taxation by reason of section 117 (b). Having enjoyed the benefit of section 117 (b) in their computation of net income in 1952, petitioners must now have their net operating loss carrybacks reduced by the amount of said benefit if they desire the benefit of section 122 (c).

*Decision will be entered under Rule 50.*